**THETA PROPERTIES et al.**

v.

**RONCI REALTY CO., INC.**

**No. 2001–359–Appeal.**

Supreme Court of Rhode Island.

Jan. 30, 2003.

Guido R. Salvadore, Providence, for Plaintiff.

Matthew T. Oliverio, Dante J. Giammarco, Providence, for Defendant.

Present: WILLIAMS, C.J., LEDERBERG, FLANDERS, and GOLDBERG, JJ.

## OPINION

FLANDERS, Justice.

Raising the dead to sue them can prove as difficult with dissolved corporations as with other quondam life forms. An attorney for the defendant, Ronci Realty Company, Inc. (Ronci), a dissolved corporation, filed a notice of appeal from a Superior Court order denying a motion to vacate the default judgment against Ronci and from the entry of a default judgment in favor of the plaintiffs: Theta Properties, a Rhode Island partnership, its general partners Robert P. Terino and Joseph A. Santoro, Theta Properties, Inc., and Robert P. Terino. Ronci's attorney also moved this Court to stay enforcement of the order granting the plaintiffs a default judgment, and a duty justice granted this relief. Because a dissolved corporation—whose statutory wind-up period has expired—is legally dead and cannot thereafter be sued, the motion justice erred in denying the motion to vacate the judgment against Ronci, which was void *ab initio*. Therefore, we reverse, vacate the judgment, and remand for entry of an amended judgment dismissing the complaint.

## Facts and Travel

On April 3, 1986, plaintiff Robert Terino (Terino), a partner of plaintiff Theta Properties (Theta), a Rhode Island general partnership, entered into a purchase and sale agreement (agreement) on behalf of Theta with Ronci. In the agreement, Ronci agreed to sell and Terino agreed to buy a certain parcel of real estate at 184 Woonasquatucket Avenue, North Providence. The property bordered the Woonasquatucket River at a point where a dam connected it with another property that Ronci owned. The dam straddled the North Providence and Johnston town lines. The agreement included a provision giving the buyer an option to purchase the dam, along with certain riparian rights. The agreement also provided that the option would expire if it were not exercised by April 30, 1989. On June 26, 1986, the parties closed on the sale and Ronci delivered a deed to the property to Theta, as Terino's nominee. The plaintiffs assert, and Ronci concedes, that Theta never exercised the option to purchase this property, but that the deed from Ronci to Theta erroneously included a description of the dam and the riparian rights that were described in the purchase and sale agreement. A year after the sale, on July 1, 1987, without noticing the mistake, Theta delivered a quitclaim deed to plaintiff The-

ta Properties, Inc. that contained the same description of the property in question.

Some time after the original transfer, Ronci Enterprises, Inc., a Rhode Island corporation, acquired both Ronci and its parent corporation, F. Ronci Company, Inc. On December 30, 1996, Ronci voluntarily dissolved itself by filing articles of dissolution with the secretary of state. As of that time, neither Ronci nor anyone else had paid any taxes on the property since June 26, 1986.

In 2001, approximately fourteen years after the transfer of the property to Theta, and almost five years after Ronci had dissolved, plaintiffs filed suit against Ronci seeking to reform the deed and to reconvey the dam back to Ronci.[1] But the time for Ronci to sue or be sued had expired in 1998—two years after it dissolved in 1996. See G.L.1956 § 7–1.1–98 (allowing two years for dissolved corporations to sue or be sued).

Nevertheless, plaintiffs caused the summons and complaint to be served on Ronci's former officer and on its former agent for service of process. Unsurprisingly, Ronci filed no response to plaintiffs' complaint within twenty days of this service, as it otherwise would have been required to do by Rule 12(a)(1)(A) of the Superior Court Rules of Civil Procedure. Receiving no response from Ronci, plaintiffs filed an affidavit in support of their motion to default Ronci, pursuant to Rule 55(a) and (b)(3) of the Superior Court Rules of Civil Procedure. The clerk, however, apparently failed to enter a default against Ronci at that time. Undeterred, plaintiffs filed a motion for the entry of a default judgment. Before the hearing on that motion, an attorney for Ronci moved to dismiss the

complaint under Rule 12(b), and also objected to plaintiffs' motion for a default judgment. Ronci's attorney asserted that because the secretary of state had dissolved Ronci as a corporation on December 30, 1996, it no longer existed as a legal entity, and, therefore, it could not be sued or properly served with process. Still undeterred, plaintiffs then filed a motion for the entry of a default *nunc pro tunc*. On August 6, 2001, the court not only entered a default against Ronci *nunc pro tunc*, but also a judgment of default.

Thereafter, an attorney for Ronci filed a notice of appeal on its behalf, moved to stay the judgment, and moved to vacate the default judgment, but the court denied these motions. Ronci's attorney then appealed from the denial of the motion to vacate the default judgment and also filed a motion in this Court to stay the enforcement of the default judgment. A duty justice of this Court granted that request to stay, which has remained in effect throughout this appeal.

### Analysis

Ronci's lawyers suggest on appeal that the trial justice erred by defaulting Ronci and then by entering a default judgment against a corporation that had ceased to exist. They argue that, because Ronci had dissolved itself in 1996, plaintiffs could not sue it or properly serve it with process.

Pursuant to Rule 4(e)(3) of the Superior Court Rules of Civil Procedure, service of process on a corporation may be accomplished by:

> "delivering a copy of the summons and complaint to an officer, a managing or general agent, or by leaving a copy of

---

1. Apparently, ownership of this dam was tantamount to the ownership of contaminated property because of the potential liabilities and costs that the dam owner faced in maintaining, repairing, and improving the dam vis-à-vis the rights of others who might be affected by its condition.

the summons and complaint at an office of the corporation with a person employed therein, or by delivering a copy of the summons and complaint to an agent authorized by appointment or by law to receive service of process * * *."

In this case, the record indicates that plaintiffs' counsel caused Ronci's former attorney to be served with the complaint because, when Ronci was still extant, that attorney had served as Ronci's agent for service of process. Ronci's former president, Frank Ronci, also received a copy of the summons and complaint via certified mail addressed to him at his residence (his wife, Nancy, signed for the letter that accompanied the summons and complaint). Ronci's attorneys contend, however, that both attempts at service were improper because the corporation did not exist when plaintiffs purportedly effected service, and, thus, it no longer could be sued by serving either a former officer or its former agent for service of process.

In *Halliwell Associates, Inc. v. C.E. Maguire Services, Inc.*, 586 A.2d 530, 532 (R.I.1991), this Court observed that "[a]t common law the legal dissolution of a corporation marked the death of its corporate existence and, in the absence of statutory provisions to the contrary, terminated that existence for *all* purposes whatsoever." Consequently, a "corporation's capacity to sue or be sued was completely destroyed upon dissolution." *Id.* at 533. Statutes have modified this common-law rule by providing for a post-dissolution period in which a corporation remains extant beyond its dissolution date for the limited purposes of winding up the business and of defending lawsuits or filing any claims related to the business. *Id.* We have held, however, that the shareholders of a dissolved corporation may not bring a claim in the name of the corporation unless they assert it before the expiration of the

statutory wind-up period. *Id.* We reasoned that "allowing such suits to proceed after the expiration of the wind-up period would render the limitation contained in the [state] survival statute a nullity, barring nothing." *Id.* at 535.

Although this case involves a Rhode Island dissolution statute and a claim against a dissolved Rhode Island corporation—rather than, as in *Halliwell*, a dissolved Massachusetts corporation—our analysis in *Halliwell* is still applicable. Indeed, it would be anomalous for the General Assembly to allow a dissolved corporation to be sued indefinitely, while prohibiting it from asserting its own rights against others. We are of the opinion that any claim asserted against a dissolved corporation must be brought within the statutory post-dissolution period for doing so; namely, within two years of the dissolution. *See* § 7-1.1–98 (providing two years for a dissolved corporation to sue or be sued). Our decision is in accord with other jurisdictions that have addressed the issue. *See State of Missouri ex rel. National Super Markets, Inc. v. Dowd*, 1 S.W.3d 595, 598 (Mo.Ct.App.1999); *Van Pelt v. Greathouse*, 219 Neb. 478, 364 N.W.2d 14, 20 (1985); *M.S. v. Dinkytown Day Care Center, Inc.*, 485 N.W.2d 587, 590 (S.D. 1992); *Kradel v. Piper Industries, Inc.*, 60 S.W.3d 744, 751 (Tenn.2001); *Martin v. Texas Woman's Hospital, Inc.*, 930 S.W.2d 717, 721 (Tex.App.1996).

Theta argues that an objection to personal jurisdiction or service of process is deemed to be waived under Rule 12(h) if it was not timely raised in an answer or motion. Although service may be waived by the entry of a general appearance, *see Mack Construction Co. v. Quonset Real Estate Corp.*, 84 R.I. 190, 194, 122 A.2d 163, 164 (1956) ("[i]nasmuch as it is well settled that by a general appearance a defendant submits himself to the jurisdic-

tion of the court, any failure to serve him with process becomes immaterial"); 1 Kent, *R.I. Civ. Prac.* § 12.2 at 109 (1969) ("a defendant who simply answers to the merits of a claim thereby consents to the jurisdiction of the court"), "jurisdiction of the court over the person of a defendant is dependent upon proper service having been made." *Shannon v. Norman Block, Inc.,* 106 R.I. 124, 130, 256 A.2d 214, 218 (1969). Here, Ronci's attorney never answered the merits of plaintiff's complaint, but simply entered what amounted to a special appearance via a motion to dismiss grounded on Ronci's incapacity to be sued or served with process. Absent a waiver of personal jurisdiction or proper service of legal process, the court lacks jurisdiction to entertain a suit or to enter judgment against a party who has not been properly served with process. *Nisenzon v. Sadowski,* 689 A.2d 1037, 1049 (R.I.1997). Consequently, a judgment entered against a party who has not been properly served with process, or who has not made an appearance in the lawsuit, is void *ab initio. Id.* Because a corporation ceases to exist, for *all* purposes, including receiving service of process, once the statutory wind-up period after its dissolution has expired, the motion to vacate filed by Ronci's attorneys should have been granted because Theta's suit was untimely under § 7–1.1–98 (providing a two-year period for suing a dissolved corporation) and the amendment to § 7–1.1–98.1 (P.L.2000, ch. 503, § 1) could not be applied retroactively to resurrect Ronci from its corporate grave.

Although some courts in other jurisdictions have required a dissolved corporation to plead the expiration of the applicable statute as an affirmative defense, *see Adams v. Knabb Turpentine Co.,* 435 So.2d 944, 947 (Fla.Dist.Ct.App.1983); *Shute v. Chambers,* 142 Ill.App.3d 948, 97 Ill.Dec. 92, 492 N.E.2d 528, 530–31 (1986), these cases are unpersuasive for several reasons. First, a dissolved corporation that has ceased to exist for all purposes cannot be expected to raise itself from the ranks of the legally dead, to obtain and hire legal counsel, and then to plead the applicable statute of limitations or repose within twenty days of effecting service of process on one of its former officers or agents. Second, post-dissolution statutes establishing limited periods for asserting claims by and against dissolved corporations are more akin to the time limitation contained in the workers' compensation statute that this Court addressed in *Emmett v. Town of Coventry,* 478 A.2d 571 (R.I.1984). In that case, we held that the time limitation in the Workers' Compensation Act was "a statute of repose in which satisfaction of the time limitation operates as a condition precedent to bringing the action." *Id.* at 573.

Unlike a statute of limitations, which "bars a right of action unless the action is filed within a specified period after an injury occurs[,] * * * a 'statute of repose' terminates any right of action after a specific time has elapsed* * *." *Salazar v. Machine Works, Inc.,* 665 A.2d 567, 568 (R.I.1995). Here, § 7–1.1–98, the two-year statute for suing dissolved corporations, operates as a condition precedent to maintaining the lawsuit in question: if a party fails to sue within the statutory period for doing so, there is no longer an entity that can sue or be sued, and any right of action against the corporation terminates. *Accord Dowd,* 1 S.W.3d at 598; *Van Pelt,* 364 N.W.2d at 20; *M.S.,* 485 N.W.2d at 589; *Martin,* 930 S.W.2d at 720–21. Consequently, any judgment entered against a dissolved corporation that was not sued within the two-year period for doing so is void.

Theta contends that it caused Ronci to be properly served within the period con-

tained in the applicable Rhode Island statute for doing so. It argues that it accomplished service of process on Ronci within the five-year period that retroactively applied to Ronci under § 7–1.1–98.1. Before 2000, § 7–1.1–98.1 provided that a corporation that had been dissolved "in any manner" continued its existence for two years after its dissolution to enable it to "settle and close its affairs, to dispose of and convey its property, to discharge its liabilities, and to distribute its assets." In 2000, however, the General Assembly extended this wind-up period to five years. *See* P.L.2000, ch. 503, § 1. The trial justice found that this amendment was both remedial and retroactive. Therefore, he applied it to Ronci, even though it had ceased to exist for all purposes at least two years before the Legislature enacted the 2000 amendment.

But neither the parties nor the trial justice considered the applicability of § 7–1.1–98—entitled "Survival of remedy after dissolution"—to the complaint in this case.[2] Section 7–1.1–98.1, which continues corporate powers in existence for a limited period after the dissolution occurs, allows the corporation to wind up its business during that period, but under § 7–1.1–98, it still must sue or be sued within two years of its dissolution, even though it now has five years for winding up all its other affairs. Indeed, if a lawsuit is filed within the two-year period for doing so, it may take several additional years just for the dissolved corporation to "wind up" the lawsuit. Thus, these provisions are not inconsistent.

■ Frequently, the power of dissolved corporations to sue and be sued is contained in a wind-up statute such as § 7–1.1–98.1. *See* 16A William M. Fletcher et al., *Fletcher Cyclopedia of the Law of Corporations* § 8144 (perm.ed.1995). But in this jurisdiction, the Legislature has provided separately in § 7–1.1–98 that dissolved corporations and third parties having any claim(s) against them have a two-year period within which to commence suit to enforce their rights, claims, or liabilities involving the corporation. Although § 7–1.1–98.1 now provides the corporation with up to five years to settle and to wind up its affairs, § 7–1.1–98 was not similarly amended, much less was it made retroactive to dissolved corporations such as Ronci whose two-year period to sue or be sued already had expired when the amendment to § 7–1.1–98.1 became effective in 2000.

■ "In construing the provisions of statutes that relate to the same or to similar subject matter, the court should attempt to harmonize each statute with the other so as to be consistent with their general objective scope." *Kaya v. Partington*, 681 A.2d 256, 261 (R.I.1996).

2. General Laws 1956 § 7–1.1–98 provides:
 "The dissolution of a corporation either:
 (1) *by the issuance of a certificate of dissolution by the secretary of state;* or
 (2) by a decree of court when the court has not liquidated the assets and business of the corporation as provided in this chapter; or
 (3) by expiration of its period of duration, *shall not take away or impair any remedy available to or against the corporation, its directors, officers, or shareholders, for any right or claim existing, or any liability incurred, prior to the dissolution if action or other proceeding on the right, claim, or lia-*

*bility is commenced within two (2) years after the date of the dissolution.* Any action or proceeding by or against the corporation may be prosecuted or defended by the corporation in its corporate name. The shareholders, directors, and officers have power to take any corporate or other action that is appropriate to protect the remedy, right, or claim. If the corporation was dissolved by the expiration of its period of duration, the corporation may amend its articles of incorporation at any time during the period of two (2) years so as to extend its period of duration." (Emphases added.)

Considering § 7–1.1–98 and 7–1.1–98.1 together, the two-year limitation period contained in § 7–1.1–98 for commencing suit by or against a dissolved corporation is without doubt the statute that applies in deciding whether plaintiffs' suit against Ronci was timely. The manner of Ronci's dissolution appears to have complied with § 7–1.1–98(1). There was no dispute in this case that Ronci voluntarily dissolved itself on December 30, 1996 by filing articles of dissolution with the secretary of state. Under § 7–1.1–86(a)(3), if the secretary of state "finds that the articles of dissolution conform to the law, he or she shall, * * * [i]ssue a certificate of dissolution." Furthermore, Ronci was not attempting to wind up its affairs through this lawsuit; indeed, neither Ronci nor any of its successors has expressed any wish to maintain or resurrect Ronci's corporate existence for any purpose whatsoever, much less to defend this lawsuit. Thus, this case involved an action brought against a dissolved corporation by an entity asserting a claim against it after the statutory period for doing so had expired. Under these circumstances, we hold, § 7–1.1–98, with its two-year period of repose, barred this lawsuit and deprived the Superior Court of jurisdiction to entertain this action, much less to enter a judgment against a deceased corporation.

 But even if, as plaintiffs argue, the 2000 amendment to § 7–1.1–98.1 was applicable to corporations that had dissolved before its effective date, it could not possibly be applied to a corporation such as Ronci whose wind-up period also had expired before the effective date of the amendment. Generally, statutes and their amendments are "to operate prospectively unless it appears by clear, strong language or by necessary implication that the Legislature intended to give the statute retroactive effect." *Pion v. Bess Eaton Donuts*

*Flour Co.*, 637 A.2d 367, 371 (R.I.1994) (quoting *VanMarter v. Royal Indemnity Co.*, 556 A.2d 41, 44 (R.I.1989)). Here, the Legislature specifically provided that the 2000 amendment to § 7–1.1–98.1 "shall take effect upon passage, and shall apply to a corporation dissolved under this chapter or to a corporation whose certificate of incorporation was revoked by the Secretary of State prior to the passage of this act." P.L.2000, ch. 503, § 2.

Because of the above-quoted alternative language in the amendment, Ronci contends that the General Assembly intended that the amended statute should apply retroactively only to those corporations that had their certificates of incorporation revoked by the Secretary of State before the passage of the amendment, but not to corporations such as Ronci that *dissolved* before the amendment took effect. We reject this interpretation. First, it must be noted that the 2000 amendment used the past tense in referring to a corporation that was "dissolved," rather than speaking in the future tense of a corporation that will be dissolved. This indicates that the Legislature intended the amendment to apply to corporations that had dissolved *before* it enacted the amendment in 2000. In addition, the body of the 2000 amendment requires the continuation of *all* corporations subject to its terms for five years, whether the corporation was dissolved, terminated, *or* has had its certificate revoked. Thus, it would seem inconsistent with the purpose of the act to cause the five-year period to apply retroactively only to corporations with revoked charters but not to corporations such as Ronci that had dissolved by operation of law. Moreover, Ronci's interpretation would cause the amendment's language, referring to dissolved corporations, to be redundant. Under the most straightforward reading of the amendment, we hold, the phrase "prior to the passage of this act" refers both to

corporations that had dissolved and to those corporations whose charter was revoked, depending on the means by which the corporation in question met with its demise.

■■■■ Ronci next contends that § 7–1.1–98.1 is a substantive statute, not a remedial statute, and therefore it should not be applied retroactively. The distinction between substantive and remedial statutes, however, becomes significant only in cases in which "a statute lacks the requisite specificity or necessary implication regarding retroactivity." *Lawrence v. Anheuser–Busch, Inc.*, 523 A.2d 864, 869 (R.I. 1987). In this case, as discussed above, the amendment to § 7–1.1–98.1 specifically provided that it shall be applied to corporations that dissolved before the 2000 amendment became effective. Thus, "[t]he 'clear enunciation of a legislative choice overrides any constructional preference for prospective or retrospective application that might otherwise obtain.'" *Lawrence*, 523 A.2d at 869 (quoting *Raymond v. Jenard*, 120 R.I. 634, 637, 390 A.2d 358, 359 (1978)).

■■■ Finally, Ronci gets to the heart of the matter when it argues that applying the 2000 amendment of § 7–1.1–98.1 to it would violate its due-process rights if it were forced to assume ownership of the property in question after it dissolved and after the two-year period for filing lawsuits against it had expired. Retroactive legislation is proper "as long as it does not impair contractual obligations or interfere with vested rights." *Lawrence*, 523 A.2d at 869.

The statute at issue in the present case (§ 7–1.1–98.1) allows a dissolved corporation to continue its existence for five years after the date of its dissolution to enable it to wind up and to settle its affairs. Although § 7–1.1–98.1 is not a statute of limitations, its retrospective application

would serve to extend the period within which a dissolved corporation could wind up its affairs. In *Kelly v. Marcantonio*, 678 A.2d 873, 875 (R.I.1996), we considered whether the retroactive application of G.L. 1956 § 9–1–51 was constitutionally permissible. That statute provided that claims based upon childhood sexual abuse must be brought within seven years of the alleged abuse or within seven years of the time the victim discovered or should have discovered that the injury was caused by the alleged act. We held that the retroactive enlargement of the applicable limitation period by this statute would be impermissible insofar as it applied to actions that already were time-barred when the statute was enacted. *Kelly*, 678 A.2d at 883. In *Kelly*, we applied the following reasoning from the dissenting opinion in *Campbell v. Holt*, 115 U.S. 620, 6 S.Ct. 209, 29 L.Ed. 483 (1885):

> "[A]n immunity from prosecution in a suit, whether by reason of a statutory bar or otherwise, is as valuable a right to one party as the right to prosecute that suit is to the other; that therefore the opportunity to defend on statute of limitations grounds is a vested right protected against legislative deprivation by due process concepts; and that even if that opportunity is not deemed a vested right, but only a remedy, it is no less entitled to constitutional protection." *Kelly*, 678 A.2d at 883 (quoting *Twomey v. Carlton House of Providence, Inc.*, 113 R.I. 264, 270, 320 A.2d 98, 101 (1974)).

We applied this reasoning to the facts in *Kelly* because the 1986 amendment to article 1, section 2, of the Rhode Island Constitution included a due-process clause applicable to civil cases. *Kelly*, 678 A.2d at 883. Thus, *Kelly* held that it would be permissible for the General Assembly to enlarge a limitation period and apply the

amendment retroactively to pending cases that were not yet time-barred, but that due process, under the amended constitutional provision, precluded legislation that retroactively revived a time-barred action. *Id.* Thus, we concluded, such legislation would violate a defendant's vested and substantive rights to defend on statute of limitation grounds. *Id.*

Here, although we are faced with a statute of repose rather than with a true statute of limitations, the same due-process considerations still are controlling. Thus, even if § 7–1.1–98.1 were applicable to attempted lawsuits against dissolved corporations—which, for the reasons previously stated, it was not—the retroactive application of § 7–1.1–98.1 to dissolved corporations such as Ronci still would be improper. The amendment to § 7–1.1–98.1 became law on July 22, 2000. Before that amendment became effective, a corporation continued to exist, for purposes of § 7–1.1–98.1, only for two years after it dissolved. Because Ronci dissolved in December 1996, at the time the new law became effective on July 22, 2000, no action could be brought against Ronci under either § 7–1.1–98 or § 7–1.1–98.1 because the applicable two-year period for doing so had expired in 1998. Thus, the 2000 amendment to § 7–1.1–98.1 could not constitutionally be applied to Ronci in any event.

▮ Finally, Theta contends that Ronci is still subject to suit because, like an ancient Egyptian pharaoh, it was buried with all its assets and liabilities still there for creditors to seize. With respect to Ronci's liabilities, we have concluded that any claim against Ronci had to have been brought before the two-year post-dissolution period that expired in 1998.[3] Theta

argues, however, that equitable title to the dam and the other property at issue in this case still resides with Ronci because it failed to fully dispose of this property when it dissolved. But the alleged failure of a corporation to dispose of all its property before it dissolves does not serve to resurrect a dissolved corporation from its legal resting place. "In enacting a survival statute, the [Rhode Island] Legislature sought to strike a balance between two competing legal principles; first, the rights of shareholders of a dissolved corporation to succeed to the assets of the corporation upon dissolution and, second, the implementation of an orderly and definite means of winding up the affairs of a dissolved corporation." *Halliwell Associates, Inc.,* 586 A.2d at 535. Although the Legislature requires a dissolved corporation to dispose of its assets to the extent feasible, we do not believe that it intended that a corporation should exist indefinitely as long as it still owned *any* property that, for whatever reason, could not be liquidated or sold within the post-dissolution wind-up period. Rather, once a corporation is dissolved, "[u]nder a general equitable theory commonly known as the 'trust fund' doctrine, the property of a dissolved business corporation ultimately passes to its stockholders as the actual owners of such property * * *." *Friendly Home, Inc. v. Shareholders and Creditors of Royal Homestead Land Co.,* 477 A.2d 934, 938 (R.I.1984). Custody of the property passes "from the directors acting as directors for a corporation *de facto,* to the directors acting as trustees for those interested in succession to what had been a corporation *de facto.*" *DiPrete v. Vallone,* 72 R.I. 137, 142, 48 A.2d 250, 253 (1946) (quoting *New York,*

---

3. We note that there is no allegation that Ronci dissolved in a fraudulent manner or for fraudulent purposes, such as the illegal discharge of debt, avoidance of liabilities, or failure to provide proper notice of dissolution to its creditors.

*Bridgeport & Eastern Ry. Co. v. Motil,* 81 Conn. 466, 71 A. 563, 565 (1908)).

In this case, however, the 1986 deed purported to convey the property to Theta. As Ronci conceded, this conveyance was the result of a mutual mistake. Nevertheless, because Ronci ceased its corporate existence as of 1998, neither Ronci nor Theta could sue to seek reformation of the deed or a reconveyance of the property. Thus, Theta succeeded to ownership of the disputed property.

 Theta also suggests that the Town of Johnston purchased a "major part of the dam" at a tax sale, but that the town has failed to foreclose on the equity of redemption. "[A]ny person having an interest in land sold for nonpayment of taxes has an opportunity to redeem the property by the payment of the requisite amount to the purchaser, even up to the time the petition to foreclose is pending in court." *Picerne v. Sylvestre,* 113 R.I. 598, 600, 324 A.2d 617, 618 (1974). As per the deeds, we hold that Theta owns this right of redemption because it obtained title to the property from Ronci and its ability to reconvey the property to Ronci has expired. Until it exercises such a right, however, title to the land purchased for nonpayment of taxes rests with the town as the tax-title purchaser because, after one year, title conveyed by tax sale is "absolute, subject only to defeasance by redemption." *Id.* at 600–01, 324 A.2d at 618.

## Conclusion

 Section 7–1.1–98 barred Theta's attempt to sue Ronci more than two years after it dissolved as a corporation. And because retroactive application of § 7–1.1–98.1 to Ronci would violate the Rhode Island Constitution's due-process clause, the plaintiffs cannot rely on its provisions to sue Ronci. Because a dissolved corporation cannot be sued beyond the two-year period set forth in § 7–1.1–98, the judgment appealed from is void. "A motion to remove a default which contends that a judgment is void is one which is *not* addressed to the court's discretion." *Shannon,* 106 R.I. at 130, 256 A.2d at 218. Thus, the Superior Court erred in failing to grant this motion.

For these reasons, the defendant's appeal is sustained. We vacate the default judgment against Ronci, reverse the denial of the defendant's motion to vacate default judgment *pro forma,* and remand this case to the Superior Court with instructions to enter a judgment dismissing the complaint with prejudice.

Justice LEDERBERG participated in all proceedings but deceased prior to the filing of this opinion.