[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] DECISION
Before this Court is an appeal from a decision of the Zoning Board of Review of the Town of North Providence (Board), which granted Anthony G. Farina (Applicant) a dimensional variance. Appellants William and Elizabeth Scampoli (Appellants) seek reversal of the Board's decision. Jurisdiction is pursuant to G.L. 1956 § 45-24-69.
 FACTS AND TRAVEL
The lot in question is located at 1339 Smith Street in North Providence, and is known as Assessor's Plat 8, Lot Nos. 247 and 248. The property is located in an RL-13 zoning district, which requires 13,000 square feet minimum lot size in order to build. North Providence Town Ord. § 201. The subject lot contains approximately 8,694 square feet. The property is currently used as a professional medical office and contains eight (8) or nine (9) parking spaces. Applicant sought a dimensional variance in order to construct an addition to expand the existing building. The building currently has approximately 2,088 square feet of floor space, and the proposed expansion would increase the floor size to approximately 4,300 square feet. The proposal did not include the creation of any additional parking spaces.
The Board held a properly noticed public hearing regarding the application on March 18, 2004. The Applicant testified that he was seeking the expansion in order to make his office more efficient and be more accommodating in terms of handicap accessibility. Applicant sought, for example, to increase the number of restrooms, widen the hallways to afford more efficient patient traffic flow through the office, expand the waiting room, and provide more office and record-keeping space. Applicant testified that the layout of the premises was inconvenient for staff and patients. The architect who designed the expanded building testified as to the extent of the additional square footage. A real estate agent and appraiser also testified to the surrounding neighborhood and the overall effect expansion of the office would have, stating that Applicant had brought the property "to a much higher level than it was previously" and it now conformed with other offices in the area. (Hearing Tr. at 17.) Two representatives from the Town Council also spoke in favor of the Applicant, stating that such improvements were good for the area. Several neighbors testified about the severe parking problems that existed in the neighborhood, exacerbated by the Applicant's medical office. These neighbors testified regarding blocked driveways, narrowing of the streets, a blocked fire hydrant, and the difficulties that cars, trucks, and school buses have navigating the street because of the parking problem.
At the conclusion of the hearing, the Board granted the dimensional variance by a vote of 4-1, allowing the Applicant to expand the existing structure. Appellants timely filed this appeal. A decision is herein rendered.
 STANDARD OF REVIEW
The Superior Court's review of a zoning board decision is governed by § 45-24-69(d), which provides that:
 "The court shall not substitute its judgment for that of the zoning board of review as to the weight of the evidence on questions of fact. The court may affirm the decision of the board of review or remand the case for further proceedings, or may reverse or modify the decision if substantial rights of the appellant have been prejudiced because of findings, inferences, conclusions or decisions which are:
 (1) In violation of constitutional, statutory, or ordinance provisions;
 (2) In excess of the authority granted to the zoning board of review by statute or ordinance;
(3) Made upon unlawful procedure;
(4) Affected by other error of law;
 (5) Clearly erroneous in view of the reliable, probative, and substantial evidence of the whole record; or
 (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion."
When reviewing a decision of a zoning board, a justice of the Superior Court may "not substitute [his or her] judgment for that of the zoning board if [he or she] conscientiously find[s] that the board's decision was supported by substantial evidence." Apostolou v. Genovesi,120 R.I. 501, 507, 388 A.2d 821, 825 (1978). "Substantial evidence . . . means such relevant evidence that a reasonable mind might accept as adequate to support a conclusion, and means [an] amount more than a scintilla but less than a preponderance." Lischio v. Zoning Bd. of Reviewof North Kingstown, 818 A.2d 685, 690 n. 5 (R.I. 2003) (quoting Caswellv. George Sherman Sand Gravel Co., Inc., 424 A.2d 646, 647 (R.I. 1981)). Thus, the reviewing court must examine the record to determine whether competent evidence exists to support the Board's decision.Compare New England Naturist Assoc., Inc. v. George, 648 A.2d 370, 371
(R.I. 1994) (quashing Superior Court judgment based on erroneous ruling), with von Bernuth v. Zoning Bd. of Review of New Shoreham,770 A.2d 396, 401-02 (R.I. 2001) (denying relief granted by zoning board based on lack of competent evidence and remanding to Superior Court). Conclusional or insufficient evidence warrants the reversal of a zoning board's decision. Hopf v. Bd. of Review of City of Newport, 120 R.I. 275,230 A.2d 420 (1967).
 DIMENSIONAL VARIANCE
Appellants argue that the standard for granting a dimensional variance has not been met. According to Appellants, no evidence was presented to show that the hardship suffered amounted to more than a mere inconvenience, as narrow hallways and small waiting areas do not rise to the level for which zoning relief is necessitated. Appellants contend that the relief was not the least relief necessary because it was indeed not necessary at all. In fact, Appellants state that the property is already overburdened by the current use as a medical office given its high volume of patients, as there is not enough parking for all who need it during their office visit.
The Board argues that the Appellants have not argued on the basis of all of the prongs in the standard (§ 45-24-41(c)), but Appellants instead only argued that the hardship was not more than a mere inconvenience and that the relief was not the least relief necessary. In the alternative, the Board argues that the Applicant sought the relief in order to bring the office in conformity with existing laws and regulations regarding handicapped persons. As to the least relief necessary claim, the Board simply states that the alternatives suggested by the Appellants — moving the office to a different location altogether or limiting the number of patients seen at any one time — are unreasonable. Instead, the Board suggests that the relief requested was reasonably necessary to all the full enjoyment of the permitted use of the property.
"A dimensional or area variance . . . provides relief from one or more of the dimensional restrictions that govern a permitted use of a lot of land, such as area, height, or setback restrictions." Sciacca v. Caruso,769 A.2d 578, 582 n. 5 (R.I. 2001); see also § 45-24-31(61)(ii) (defining dimensional variance by statute). Dimensional or area variances are governed by § 45-24-41(c), which provides the following standards:
 "(1) That the hardship from which the applicant seeks relief is due to the unique characteristics of the subject land or structure and not to the general characteristics of the surrounding area; and is not due to a physical or economic disability of the applicant;
 (2) That the hardship is not the result of any prior action of the applicant and does not result primarily from the desire of the applicant to realize greater financial gain;
 (3) That the granting of the requested variance will not alter the general character of the surrounding area or impair the intent or purpose of the zoning ordinance or the comprehensive plan upon which the ordinance is based; and
 (4) That the relief granted is the least relief necessary."
The first requirement states that the hardship is due to unique characteristics of the land or structure and not due to general characteristics or a physical or economic disability. Appellant argues that the Applicant's primary reason for seeking the variance to expand the building is to make more office space and room in the hallways and waiting areas. The record does not provide any evidence which explains a hardship due to the unique characteristics of the land. Instead the record does attempt to relate hardship to general characteristics, which § 45-24-41(c)(1) specifically excludes as a cause of the hardship. While the current structure may be smaller than desired, its size is a general, not a unique characteristic. Lischio, 818 A.2d at 693
(analogizing size as a general characteristic). "[Z]oning boards and applicants [may not] `evade the threshold showing of hardship that is required to obtain relief.'" von Bernuth, 770 A.2d at 401 (quotingSciacca, 769 A.2d 585). Therefore, the application does not satisfy the first requirement for granting a dimensional variance.
The second requirement states that "the hardship is not the result of any prior action of the applicant and does not result primarily from the desire of the applicant to realize greater financial gain." Section45-24-41(c)(2). The Applicant testified that he has no intention of adding patients to his practice because he was already "at capacity [with a] full service of patients," but rather, sought to expand the office in order to "increase the efficiency of the office." (Hearing Tr. at 13-15.) The record demonstrates, however, that the Applicant is seeking to nearly double the square footage of the building, increasing it from "the existing building of 2,100 square feet" to "4,300 square foot total building." (Hearing Tr. at 6-7, 10.) Also at the hearing, one of the objectors testified that he "spoke to a young lady at the office today and she indicated that the [Applicant] had potential plans for expanding and adding another physician." (Hearing Tr. at 29-30.) Accordingly, the record does not reflect that the applicant met his burden in satisfying the second requirement.
The third requirement states that the relief may not alter the general character of the surrounding area or impair the intent or purpose of the zoning ordinance or comprehensive plan. The application to expand the building, without adding additional parking, conflicts with the purpose and intent of the ordinance and comprehensive plan. At the hearing, the Board's Chairman stated, "I believe the board realizes there's a parking problem. We know there's a parking problem, [and] the town council knows it. . . ." (Hearing Tr. at 48.) An application which seeks relief under one provision of the ordinance and wholly ignores another, when both provisions must be read together, clearly seeks to impair the intent or purpose of the ordinance. See Theta Props. v. Ronci Realty Co., Inc.,814 A.2d 907, 914 (R.I. 2003) (holding court should attempt to harmonize provisions of statutes dealing with similar subject matter so as to be consistent with general objective); Arc-Lan Co., Inc. v. Zoning Bd. ofReview of Town of North Providence, 106 R.I. 474, 476-77, 261 A.2d 280, 282
(1970) (holding zoning board has no authority to directly or indirectly nullify ordinance provisions). Accordingly, the application does not meet the third requirement.
The relief granted is required to be the least relief necessary under the fourth requirement for granting a variance. Evidence was presented during the hearing that a prior variance had been granted to allow for expansion of the office. Applicant apparently chose not to utilize the full extent of the variance previously granted and thus came back to get another variance. The plans submitted call for an entire second floor addition, which doubles the size of the building, from 2,100 square feet to 4,300 square feet. (Hearing Tr. at 6-7.) Such an expansion cannot be viewed as the least relief necessary. Furthermore, the additional parking required for such expansion has not been specifically addressed in the Board's decision. The application, therefore, fails to satisfy the fourth requirement.
In addition to the four requirements reviewed above, § 45-24-41(d)(2) provides that the zoning board must require evidence "that the hardship suffered by the owner of the subject property if the dimensional variance is not granted amounts to more than a mere inconvenience." Though in recent years courts have interpreted "more than a mere inconvenience" to mean "no other reasonable use," our Supreme Court has reinstated the former "more than a mere inconvenience" standard for granting a dimensional variance. Compare Sciacca, 769 A.2d at 583 n. 6 (referencing § 45-24-31(61)(ii) as definition of dimensional variance requiring showing of no other reasonable alternative) with Lischio,818 A.2d at 691-92 (noting General Assembly's revival of old Viti Doctrine standard). However, "[t]he fact that a use may be more profitable or that a structure may be more valuable after the relief is granted is not grounds for relief." Section 45-24-41(d)(2). Having not satisfied all four statutory requirements for a dimensional variance, the Applicant has not met his burden of demonstrating more than a mere inconvenience.
 PARKING
Appellants also argue that the relief sought did not include the required parking adjustment or relief. Under the North Providence Zoning Ordinance, Appellants argue that medical uses require one parking space for every 100 square feet of floor area in the building. According to the Appellants, relief from said requirement must have been sought by Applicant and was not. Because the site is already non-conforming as to parking, such a non-conformity cannot be expanded or intensified without dealing with the lack of parking, contend the Appellants. Appellants argue that without any provision regarding additional parking spaces, the grant of the variance violates Article IV of the zoning ordinance.
The Board argues a prior dimensional variance and variance from the parking requirements were granted to Applicant on June 28, 2001. Accordingly, the Board suggests that Article IV, Section 407 of the zoning ordinance applies, rendering the property free from nonconforming status because of the June 2001 variance. Additionally, the Board argues that no expansion of the use may be made without the Board's approval. The Board points out that it considered the issue of parking at great length during the public hearing, and therefore, took such an issue into consideration when deciding whether to grant the variance.
The minimum requirement for parking spaces with a professional office use is one (1) space for every 250 square feet of floor area. North Providence Town Ordinance § 710. Applicant stated on his application for the variance that the use was a "professional medical office" and "professional offices" are defined under § 201 of the Ordinance as "doctors, lawyers, and accountants." As stated, the building currently has 2,088 square feet, and the expansion would increase the floor area to approximately 4,300 square feet. With 2,088 square feet of floor space, at one (1) space per 250 square feet, the building should have eight (8) or nine (9) spots. The property currently has nine (9) parking spots. At 4,300 square feet of floor area, the property would be required to have at least seventeen (17) parking spaces based on the same formula. But 4,300 square feet is the total square footage of the building with the addition, and the requirement is that a total square footage of the "floor area used for examination, treating room, office and waiting room" be used to determine the minimum number of parking spaces. The record, however, is devoid of any such calculation.
Despite the prior variance as to parking requirements, a subsequent expansion to the structure would constitute an enlargement, expansion, or intensification of a non-conforming building. See Section 45-24-40; North Providence Town Ord. § 412. Section 412 of the Ordinance states that "[a] non-residential building or structure, or use of land, Nonconforming by parking, may be added to, enlarged, expanded or intensified provided additional parking space is supplied to meet the requirements of Article VII for such addition, enlargement, expansion or intensification." In other words, expanding the building requires the corollary parking expansion unless an additional relief is granted as to the new minimum parking requirements. See North Providence Town Ord. § 412. Furthermore, our Supreme Court has held that "there is no general `natural business growth' exception to the rule that nonconforming uses are to be strictly limited to those existing when the uses become nonconforming." Town ofRichmond v. Wawaloam Reservation, Inc., 850 A.2d 924, 935 (R.I. 2004). However, the record reflects that the Board did not actually consider such a determination.
At the hearing before the Board, Applicant's attorney, Robert Ciresi (Ciresi), responded to a direct question from the Chairman regarding the application's lack of additional parking spaces. (Hearing Tr. at 9.) Ciresi stated that "[t]he parking will remain as it presently exists on the site at this point." (Hearing Tr. at 9.) Later, the Town Council President, Robert Ricci, acknowledged that "we know there's a parking problem there." (Hearing Tr. at 24.) A real estate agent and appraiser testified that "98 percent of [the] buildings [in the area] are not in conformance with the parking ordinance." (Hearing Tr. at 19.) The son of a direct abutter, John Kevin O'Haire (O'Haire), objected to the application, stating that the cars parked in the current office parking lot "literally go across the boundary line into [his mother's] driveway." (Hearing Tr. at 27.) O'Haire also stated that "the school bus could not drive up the street in order to drop the children off at their house, because of the doctor's office and the parking that was blocking the entrance from Smith Street to Capitol View Avenue." (Hearing Tr. at 33.) O'Haire believed this was a public safety issue because a bus filled with children was then required to back up onto a busy Smith Street. (Hearing Tr. at 33.) O'Haire also brought to light the fact that there are people working in the office as early as 6:45 am and as late as 11:00 pm. (Hearing Tr. at 30.) O'Haire also opined that the office, as currently sized, required sixteen (16) parking spaces, though it only had eight (8), and adding to the structure would certainly add required parking spots. (Hearing Tr. at 30.)
Four other objectors testified against the application on the basis of parking problems. One of the objectors, a 47 year resident, said that the parking situation "is totally ridiculous," stating that people park on both sides of the street, which does not allow traffic to freely move down the street, and people do not adhere to posted traffic signs such as no parking or two hour parking. (Hearing Tr. at 37.)
Yet another objector submitted a petition against the application, signed by most of the abutters within a 200 foot radius of the property. (Hearing Tr. at 45.) The abutter submitted photographs of the typical traffic and parking problems, noting that people parked on the sidewalks and blocked a fire hydrant. (Hearing Tr. at 48-50.) The Chairman retorted, "I believe the board realizes there's a parking problem. We know there's a parking problem, the town council knows it, so I mean to keep dwelling on it, we understand that." (Hearing Tr. at 48.) The objector responded "[b]ut the concern is that the board would pass this knowing there's a parking problem." (Hearing Tr. at 48.) After several exchanges between the Chairman and one of the objectors, the Chairman said "[t]he bottom line is the parking situation." (Hearing Tr. at 59.)
One of the Board members questioned Applicant's attorney, saying, "the people are upset about parking, but if we don't grant this petition, will anything change about parking?" (Hearing Tr. at 43.) Ciresi responded "[n]o, not that I am aware of." (Hearing Tr. at 43.) Another objector asked if the "doctor could describe how many patients he [had], what's the frequency, what the exact hours are?" (Hearing Tr. at 43-44.) The Board's Chairman responded that such a line of questions "[h]as no bearing" because "his practice is not increasing so that's what we are going on." (Hearing Tr. at 44.) The objector responded that the parking was a problem whether the building increased or not, and the Chairman acknowledged, stating "we understand the problem that you have with parking." (Hearing Tr. at 44.)
However, immediately thereafter, the Chairman shifted the focus from the core issue of parking to how the property had improved since the Applicant had purchased it, and how the upkeep was improved. (Hearing Tr. at 59-60.) The upkeep or improvement of the property since its purchase has absolutely no bearing on either the parking problem or in evaluating whether to grant a variance.
There is no question that the parking problems faced in the area around the property in question are serious. Of the 64 pages of the hearing transcript, discussion of parking accounts for approximately 38 of those pages. Parking was, therefore, the core issue. In such a case, a board must take this core issue into account when considering a variance application. However, given the terse and dismissive responses from the Chairman, it is not clear to this Court whether at least some members of the Board did in fact consider parking in more than a cursory fashion. Parking is mentioned but once, tangentially, in the Board's decision. The Board's decision contains a condition "[t]hat a copy of all building plans, parking plans, etc, be submitted to the Building Inspector." (Bd. Decision at 2.)
A board is required to take all evidence before it into account when considering an application for zoning relief. Provisions of the zoning ordinances must be read in harmony with one another to give full effect to all the provisions.[1] Theta Props. v. Ronci Realty Co., Inc.,814 A.2d 907, 914 (R.I. 2003) (holding court should attempt to harmonize provisions of statutes dealing with similar subject matter so as to be consistent with general objective); Holmes v. Begin, 684 A.2d 1141, 1146
(R.I. 1996) (opining court ought to read various sections of law together and harmonize them whenever possible). A board considering an application for a dimensional variance that would allow expansion of an office must, therefore, also take into account the requisite and corollary ordinance provisions dealing with minimum parking requirements. See Theta Props.,814 A.2d at 914 (citing Kaya v. Partington, 681 A.2d 256, 261 (R.I. 1996)). In this case, the application and plans before the Board indicated that the floor area was going to significantly increase if the expansion was allowed. The Board also had before it evidence of the serious and permeating parking problem that existed on the streets surrounding the property in question. However, the Board seems to have focused on the fact that Applicant significantly improved the property and brought it in conformance with other local professional offices. However, the Board neglected to address the issue that every objector spoke to — the parking problem.
A zoning board is empowered "[t]o hear and decide other matters,according to the terms of the ordinance or other statutes. . . ." Section45-24-57. (Emphasis added.) Board members are charged with knowledge of the ordinances and the proper administration thereof. DiIorio v. ZoningBd. of City of East Providence, 105 R.I. 357, 363, 252 A.2d 350, 354
(1969). The Board's decision granting the variance is devoid of any mention of parking requirements, while minimum parking requirements are part of the ordinance. Our Supreme Court has held "that a zoning board of review may not, either directly or indirectly, act so as to, in effect, amend the provisions of a zoning ordinance and that it is without authority to nullify the pertinent provisions of the ordinance."Arc-Lan Co., Inc. v. Zoning Bd. of Review of Town of North Providence,106 R.I. 474, 476-77, 261 A.2d 280, 282 (1970). The grant of a variance which disregards the applicability of a corollary ordinance provision is made in excess of the authority granted to the Board. Id. at 476 (stating board bound by ordinance provisions and any attempt to amend clearly beyond powers expressly delegated to board). Therefore, the Board's decision granting the dimensional variance to allow expansion of the office without considering parking relief is in excess of the Board's statutory authority and in violation of ordinance provisions.
 BOARD'S DECISION
Appellants argue that the Board's decision contravenes § 45-24-69 as a violation of constitutional, statutory, and ordinance provisions, in excess of the authority granted to the Board. Appellants contend that the Board's decision is unsupported by facts or evidence which would allow it to reach the conclusions that it did in granting the variance. Therefore, Appellants urge that the Board's grant of the variance was arbitrary and capricious, and was characterized by an abuse of discretion. However, the Board argues that the decision granting Applicant is based on the facts and the preponderance of the record evidence; therefore, its decision is not arbitrary, capricious, or characterized by abuse of discretion. The Board also contends that it did not exceed its authority under the statute and ordinance.
"The zoning board of review shall include in its decision all findings of fact. . . ." G.L. § 45-24-61; von Bernuth v. Zoning Bd. of Review ofTown of New Shoreham, 770 A.2d 396, 401 (R.I. 2001). "[T]here must be in the record competent evidence to support its findings, otherwise [the board's] action will be deemed an abuse of the discretion vested in it by the ordinance." Melucci v. Zoning Bd. of Review of Pawtucket, 10 R.I. 649,652, 226 A.2d 416, 418 (1967) (citing Del Toro v. Zoning Bd. of Review ofBristol, 82 R.I. 317, 107 A.2d 460 (1954)). "[T]here should be something in the decision to inform [the reviewing court] of the grounds and basis [of the decision.]" Del Toro, 82 R.I. at 321, 107 A.2d at 462. Without adequate findings of fact, "it would be difficult to sustain the board's decision . . . in view of the inadequate record kept by it and also because of the inadequacy of the statement summarizing its decision."Sciacca, 769 A.2d at 585 (quoting Souza v. Zoning Bd. of Review ofWarren, 104 R.I. 697, 699-700, 248 A.2d 325, 327 (1968)); see also Kavenyv. Town of Cumberland Zoning Bd. of Review, No. 2003-318, slip op. at 10 (R.I. June 13, 2005).
Our Supreme Court has stated that "[f]indings made by a zoning board `must, of course, be factual rather than conclusional, and the application of the legal principles must be something more than the recital of a litany.'" Id. (quoting Irish P'ship v. Rommel, 518 A.2d 356,358-59 (R.I. 1986)). The Court has further instructed that, "[i]t is the function of the Superior Court to "examine the entire record to determine whether `substantial' evidence exists to support the board's findings."Mill Realty Assocs., 841 A.2d at 672 (quoting DeStefano, 122 R.I. at 245,405 A.2d at 1170 and citing Apostolou, 120 R.I. at 507, 388 A.2d at 824). However, "when the zoning board `fails to state findings of fact, the [C]ourt will not search the record for supporting evidence or decide for itself what is proper in the circumstances.'" Kaveny v. Town ofCumberland Zoning Bd. of Review, No. 2003-318, slip op. at 10 (R.I. June 13, 2005) (citing von Bernuth, 770 A.2d at 401, which quotes IrishP'ship, 518 A.2d at 359). With respect to variance applications, the court also "caution[ed] zoning boards and their attorneys to make certain that zoning-board decisions on variance applications . . . address the evidence in the record before the board that either meets or fails to satisfy each of the legal preconditions for granting such relief, as set forth in § 45-24-41(c) and (d)." Sciacca, 769 A.2d at 585. Indeed, "because of the complicated legal questions incident to all zoning hearings, zoning boards should avail themselves of the legal service of their municipal legal departments." Id. at 585-86 (quoting Souza v.Zoning Bd. of Review of Warren, 104 R.I. 697, 699-700, 248 A.2d 325, 327
(1968)).
The Board's findings simply review what is already stated in the application for the variance:
 "1. The subject property is known as Assessor's Plat 8, Lot Nos. 247 248, located at 1339 Smith Street, containing approximately 8,694 square feet of land, more or less, zoned residence limited.
 2. The petitioner is requesting permission to construct an addition to the existing professional medical office at 1339 Smith Street.
 3. The petitioner requests a Variance on the District Dimensional Regulations." (Bd.'s Decision at 1.)
Upon review of the above "findings" this Court is of the opinion that they are indeed not findings at all. Kaveny v. Town of Cumberland Zoning Bd.of Review, No. 2003-318, slip op. at 11 (R.I. June 13, 2005) (holding board's decision "fatally flawed" where it "lack[ed] any findings to support approval"). The Board continued with its conclusions, stating:
 "1. The Board was of the opinion that the variance requested would not alter the general characteristics of the surrounding area;
 2. The Board was of the opinion that the relief requested was the least relief necessary as set forth in RIGL 45-24-41 C and D.
 3. The proposed use would not be detrimental to the public health safety and welfare of the people in the surrounding area." (Bd.'s Decision at 1.)
Such hollow conclusions are simply boilerplate recitations and do not meet the standards for granting zoning relief, which require the Board to base their decision on substantial evidence. Irish P'ship v. Rommel,518 A.2d 356, 358-59 (R.I. 1986) (stating zoning board's token consideration in decision amounted to "recital of a litany"); Hopf v.Bd. of Review of City of Newport, 120 R.I. 275, 230 A.2d 420 (1967) (stating conclusional or insufficient evidence warrants reversal of zoning board decision). Nothing in the Board's decision informs this Court of the grounds upon which the Board based its decision. Del Toro,82 R.I. at 321, 107 A.2d at 462. This Court cannot uphold the Board's decision "because of the inadequacy of the statement summarizing its decision." Sciacca, 769 A.2d at 585 (quoting Souza v. Zoning Bd. ofReview of Warren, 104 R.I. 697, 699-700, 248 A.2d 325, 327 (1968)). Clearly the Board's decision was not supported by substantial evidence.Lischio v. Zoning Bd. of Review of North Kingstown, 818 A.2d 685, 690 n. 5 (R.I. 2003) (quoting Caswell v. George Sherman Sand Gravel Co.,Inc., 424 A.2d 646, 647 (R.I. 1981)).
Furthermore, the third conclusion in the Board's decision does not even use the appropriate standard; instead the Board employs language used when reviewing applications for special use permits, not dimensional variances. Compare North Providence Town Ord. § 505 (setting forth special use permit standard) with North Providence Town Ord. § 503 (providing variance standard). A zoning board is charged with applying the correct ordinance standards. See § 45-24-57(iv) (empowering zoning board to authorize variances under terms of ordinance based on § 45-24-41.) Our Supreme Court has advised zoning boards "to avail themselves" of the advice of the town counsel. Sciacca, 769 A.2d at 585-86. This Court finds that the Board applied the incorrect standard to the application, and as such, its decision is affected by error of law. It is also noteworthy that a doctor's office is not a permitted use, not even by special permit, in an RL zoning district. North Providence Town Ord. § 203.[2]
Interestingly, one member of the Board initially made a motion to table the matter "for calculations on the parking and for [the Board] to review the plans, which [they] didn't have a chance to do." (Hearing Tr. at 61.) The motion was not seconded and instead the Chairman stated, "the bottom line is everybody knows there is a parking problem there, the parking problem is not going to go away." (Hearing Tr. at 61.) The Chairman immediately thereafter entertained a motion to grant the variance and it was approved by a vote of four to one. As the decision does not contain evidence or findings of fact which support the Board's conclusions, this Court finds that the decision of the Board was arbitrary and capricious and was characterized by an abuse of discretion.
 CONCLUSION
After a review of the entire record, this Court finds that the Board's granting of the dimensional variance was unsupported by the reliable, probative, and substantial evidence, was arbitrary and capricious, and was in violation of ordinance provisions. The Board's decision was also affected by error of law and was characterized by an abuse of discretion. Substantial rights of the Appellant have been prejudiced. Accordingly, this Court reverses the Board's decision.
Counsel shall submit an appropriate order consistent with this opinion.
[1] "When interpreting an ordinance this Court applies the same rules of construction that are applied for statutes." Town of North Kingstonv. Albert, 767 A.2d 659, 662 (R.I. 2001). "When construing a statute `our ultimate goal is to give effect to the purpose of the act as intended by the Legislature.'" Interstate Navigation Co. d/b/a The Block Island Ferryv. Div. of Pub. Utilities and Carriers of the State of Rhode Island,824 A.2d 1282, 1287 (R.I. 2003) (quoting Oliveira v. Lombardi,794 A.2d 453, 457 (R.I. 2002)). "`This Court will not construe a statute to reach an absurd result.'" Albert, 767 A.2d at 662 (quoting State v.Flores, 714 A.2d 581, 583 (R.I. 1998)).
[2] The use of the property as a doctor's office may have been grandfathered in if the use was such prior to the adoption of the ordinance; otherwise such a use is non-conforming.