NORTHEASTERN
ELECTRIC CO., INC.

v.

AMERICAN CAPITAL
CORPORATION et al.

No. 82–372–Appeal.

Supreme Court of Rhode Island.

May 15, 1985.

Thomas H. Quinn, Jr., Quinn & Shechtman, Providence, for plaintiff.

Robert J. Quigley, Jr., Kenneth P. Borden, Higgins Cavanagh & Cooney, Providence, for defendant.

## OPINION

MURRAY, Justice.

This case involves a claim for nonpayment of amounts due Northeastern Electric Co., Inc. (Northeastern) under an oral contract with American Capital Corporation (American). The jury rendered a verdict in

favor of the plaintiff, Northeastern. The defendants, American and its president, filed a motion for a new trial based on three grounds. After a hearing and consideration of supporting papers, the trial court denied the defendants' motion. The defendants appeal from the denial of their motion for a new trial. We affirm.

At trial in 1982, American was established to have hired Northeastern to perform electrical and other work at American's premises in Newport, known as Miramar. From 1971 to 1974 much work was done, and Northeastern sent bills to American for materials supplied and labor performed. Northeastern's suit, filed in 1975, claimed that it had not been paid in full for the billed work. American defended that all bills rendered had been paid, except for two that were disputed, and that Northeastern, in any case, had been fairly compensated for the work it performed.

Northeastern's principle witness, Joseph Marino (Marino), testified as to the extent of the work done and as to Northeastern's billing process. In support of the former, workbooks with daily entries showed the labor and various types of work performed. In connection with the latter, Marino testified that bills were rendered periodically, with materials marked-up in price 12 to 15 percent in order to cover costs, in addition to another 15 percent for profit, and that labor was charged at hourly rates that ranged between $7.50 and $9. He presented a ledger sheet that purportedly was made contemporaneously with the billings and which allegedly listed all the bills sent to, and payments received from, American. Individual invoices were also entered into evidence, but these did not specify that American owed any outstanding balances. However, Marino also produced a copy of a billing summary, allegedly sent to American in November of 1974, which listed and totaled the unpaid bills.

American put several witnesses on the stand to refute Northeastern's case. American's key witness was its president, Andrew Panteleakis (Panteleakis), who also was a defendant. Panteleakis testified that many of the bills listed on Marino's billing summary of November 1974 (as well as the summary itself) were never submitted to American. American successfully established that it had paid only one of the bills listed on the summary. Panteleakis acknowledged receipt of two other bills listed on the summary, but disputed that the billed services were in fact rendered. American established that it paid other bills that were not noted on Marino's ledger sheet or summary as well as proving that it had provided some of the materials used by Northeastern on the project. Expert testimony was given in an attempt to prove that the total cost of Northeastern's work should have been no more than the amounts actually paid by American for materials supplied and for the bills it did pay. Therefore, American maintained that Northeastern had been paid in full, if not overpaid.

The jury verdict awarded Northeastern $28,606.90, the full amount listed on Marino's 1974 billing summary. The trial court found that the verdict was excessive since American had proved payment of one of the bills listed on that summary as unpaid. Therefore, the trial justice granted defendants a remittitur in the amount of $1,334.87, to which plaintiff consented, and judgment subsequently was entered in the amount of $27,272.03 plus interest.

The defendants' motion for a new trial was filed less than two weeks after the verdict was rendered, and was based upon three supporting grounds. The defendants submitted, first, that the verdict failed to administer substantial justice and was against the fair weight of the evidence; second, that the verdict had been obtained by fraud; and third, that newly discovered evidence had been found that would have affected the verdict. The trial justice denied the motion after considering these three claims. Each of these contentions is raised by defendants in this appeal.

The defendants' most significant argument involves the allegation of newly dis-

covered evidence. This evidence consists of a "general release" that allegedly waives all of Northeastern's claims against American for work performed at Miramar. It purportedly was executed by Marino and was witnessed by an employee of American in 1974. This release was found in a desk at Miramar within ten days of the close of the trial. Supporting affidavits were filed attesting to the release's validity and to the circumstances that caused it to remain hidden until after the trial.

■ Rhode Island law is wellsettled that a motion for a new trial premised on newly discovered evidence must meet two criteria in order to be granted. First, the evidence must be material enough so as to be likely to change the outcome of the case. Second, the evidence must not have been discoverable through the exercise of due diligence in time for presentation at the original trial. *Corrente v. Town of Coventry*, 116 R.I. 145, 147, 352 A.2d 654, 655 (1976); *Addeo Loan Co. v. Manocchio*, 112 R.I. 590, 596–97, 313 A.2d 649, 652 (1974).

■ Assuming arguendo that this release would constitute substantial evidence and would alter this case by providing defendants with a solid defense,[1] we are not convinced, as the trial justice was not, that defendants exercised the requisite due diligence and could not have discovered this evidence in time for the trial. Panteleakis's affidavit states that he was aware of the release's existence when the case commenced in 1975, and that he informed his attorney of its existence several times. This purported release was within the custody and control of defendants at all times during the seven years that ensued before the trial began, since it was located at Miramar. The defendants' asserted excuses for not having found the release in a timely fashion are, first, that there was a

theft of business records from Miramar in 1974 (although it is clear that this release was not stolen), and second, that the passage of time combined with defendants' voluminous records and changes in personnel made the search difficult.

Unfortunately for defendants, these facts present a case that is controlled by our decision in *Addeo Loan Co. supra*, in which we affirmed the trial justice's denial of a motion for a new trial. In *Addeo Loan Co.*, the plaintiff sued on some promissory notes and secured a judgment in its favor. Within ten days of the trial, the defendant in *Addeo Loan Co.* found a canceled check, that was allegedly made in payment on the notes. As in the case at bar, the defendant's reasons for not having found the evidence earlier were that there had been a theft of records and that years had passed between the time of the relevant transactions and the trial.

Unlike the case at bar, however, the defendant in *Addeo Loan Co.* contended that he did not have prior knowledge of the existence of his newly discovered evidence. Moreover, in *Addeo Loan Co.*, the evidence at issue was found in a place to which the defendant did not have access between the commencement of the case and the trial.[2] Here, Panteleakis concedes that he knew about this release all along and that he always had access to the location in which it eventually was found. Thus, American's position is even less compelling than that presented by the defendant in *Addeo Loan Co.* The defendants have not fulfilled the second prong of the newly-discovered-evidence test relating to due diligence, and therefore, we cannot reverse the trial court on that basis.

■ We also find no merit in defendants' contention that the verdict was obtained by fraud and that as a result, the

---

1. We shall not have to decide the issue of materiality as we find that defendants' failure to exercise due diligence in searching for this release prior to trial bars them from getting a new trial on the grounds of newly discovered evidence.

2. In *Addeo Loan Co. v. Manocchio,* 112 R.I. 590, 313 A.2d 649 (1974), the evidence was discovered on the defendant's business premises, which had been foreclosed upon immediately after the action had begun and to which the defendant had been denied access until after trial.

trial justice abused his discretion by denying defendants' motion for a new trial on that ground. A trial justice may vacate a judgment on the basis of fraud and grant a new trial pursuant to Rule 60(b)(3) of the Superior Court Rules of Civil Procedure, which is identical to the comparable federal rule. Under the rule, the motion is addressed to the discretion of the trial justice who tried the case, and the burden is on the moving party to show by clear and convincing evidence that the alleged fraud prevented him from fully presenting his case. *Wilson v. Thompson,* 638 F.2d 801 (5th Cir.1981); *Rozier v. Ford Motor Co.,* 573 F.2d 1332 (5th Cir.1978); *Woodward v. United Transit Co.,* 94 R.I. 446, 181 A.2d 622 (1962) (trial justice's decision is discretionary and will not be reversed unless he is clearly wrong).

The fraud here allegedly was committed by Marino during his testimony about the ledger sheets. He testified as to his belief that the ledger sheets had been made in the ordinary course of business, contemporaneously with the relevant transactions, and that the ledger was a complete record of all bills sent and payments received. However, his testimony, which reflected events occurring at least eight years earlier, was contradicted on cross-examination. American was able to show on cross-examination that bills and payments existed that had not been listed on the ledger sheets. Thus, the trial justice was able to infer, upon reviewing all the evidence, that many of the entries had not been made contemporaneously with the sending of the bills. Nevertheless, the trial justice found Marino to be a credible witness and although he acknowledged that Marino's testimony contained inaccuracies, the trial justice was uncertain as to whether Marino was deliberately inaccurate or he simply had forgotten some facts owing to the passage of time. Since we do not view the witnesses firsthand, we must rely upon the trial court's assessment of credibility. The defendants have not persuaded us that the trial justice was clearly wrong in finding that Marino was a credible witness.

In any event, even if defendants had proved that there was intentional misrepresentation by Marino, the fact remains that defendants were not prevented from fully defending their case on the basis of any such perjury. Indeed, they exposed all of the inaccuracies in Marino's testimony on cross-examination, in front of the jury, and still lost. The defendants have not met their burden of showing that the trial justice was clearly wrong in finding that fraud had not been committed, and therefore, we affirm the denial of defendants' motion on this ground.

The defendants' final contention is that since the judgment does not accord substantial justice and is against the fair weight of the evidence, the trial justice erred in denying defendants' motion for a new trial. The defendants specifically claim that Marino's testimony was the critical factor in plaintiff's case, and that because that testimony was flawed in certain respects, it was error for the trial justice to find Marino to be credible.

■ The applicable standard of review for such a claim is that we will uphold the trial justice unless he or she has overlooked or misconceived material evidence or otherwise was clearly wrong. *Cannone v. New England Telephone & Telegraph Co.,* —— R.I. ——, ——, 471 A.2d 211, 215 (1984).

As stated earlier, defendants' cross-examination of Marino illuminated certain inaccuracies in his testimony: flaws in his statements concerning the ledger sheet, the billing summary, and payment for the materials supplied were all brought out on cross-examination. Panteleakis's testimony, it should be noted, was not airtight either. Marino and Panteleakis each testified in support of his respective position, and the jury chose to believe Marino.

■ The trial justice adhered to his duty of carefully reviewing the evidence and passing upon the credibility of the witnesses. His assessment did not ignore the discrepancies in Marino's testimony; rather,

he added these inaccuracies into the balance when he weighed all of the evidence presented. As is frequently the case, a witness whose testimony is not letter-perfect may nonetheless be found to be credible by the factfinder who attributes the errors to a natural deterioration of the witness's memory due to the passage of time. As did the jury, the trial justice chose to believe Marino. The defendants have not convinced us that the trial justice was clearly wrong in doing so. We see no reason to reverse the trial justice's denial of the defendants' motion for a new trial on these final grounds.

We affirm the trial justice's denial of the defendants' motion for a new trial on each of the three grounds they asserted. Therefore, the defendants' appeal is denied and dismissed.