DECISION
This matter is before the Court on Mendon Road Leasing Corporation's ("Defendant") appeal of the January 4, 2006 District Court decision, pursuant to which Tonetti Enterprises, Inc. ("Plaintiff") was awarded possession of the premises it had been leasing to Defendant. Also before the Court for decision is Digital Federal Credit Union's ("Digital") Motion to Intervene. For the reasons set forth below, the appeal and the motion are denied.
 Facts and Travel
The dispute before the Court arises out of a lease agreement ("Lease Agreement") that was entered into by Plaintiff and Defendant's predecessor, 99A Management Corporation,[1] on November 22, 2000. Plaintiff agreed to lease to Defendant a piece of commercial property located at 1754 Mendon Road, Cumberland, Rhode Island. Pursuant to the Lease Agreement, Defendant is to pay rent on an annual basis and is further required to pay common area maintenance charges ("CAM") as additional rent. (Lease Agreement at ¶¶ 2, 4.1(a).) The Lease Agreement provides that at the end of each 12 month period, Plaintiff shall adjust the CAM charges to reflect the actual expenses incurred by Plaintiff, but Defendant shall have the right to review Plaintiff's books and records upon reasonable request within 60 days of assessment of the CAM charges. (Id. at ¶ 4.1(a).) Furthermore, the Lease Agreement contains a clause providing that if Defendant notifies the Plaintiff of any mortgagee, Plaintiff is obliged to send that mortgagee a copy of any notice that is given to Defendant. (Id.
at ¶ 8.1.)
On January 4, 2002, Plaintiff filed an action against Defendant for commercial eviction due to nonpayment of rent. (TonettiEnterprises, LLC. v. Hemisphere Management Corp., Sixth Div. Dis. Ct. CA: 02-137) The parties were able to resolve that dispute, and a consent order ("Consent Order") was executed on February 27, 2002. Under Paragraph 6, if Plaintiff seeks to enforce the Consent Order for noncompliance, Plaintiff is required to provide notice to Hemisphere Management and its attorneys, Michael Kelly and Mark Russo. (Defendant's Exhibit D.)
Defendant claims that on February 3, 2003, it entered into a mortgage agreement with Digital. Digital recorded its interest in the property in the Cumberland Registry of Deeds, and according to Defendant, letters requesting waiver for Digital were sent to Plaintiff. Those letters, however, were not signed by Plaintiff, and there is no further evidence that Plaintiff received them. Thereafter, Plaintiff asserts that on August 1, 2005, it sent a letter to Defendant informing it that CAM charges were due. Defendant claims it did not receive this letter until September 29, 2005, and that on that date, it requested to review Plaintiff's books and records but never received a response from Plaintiff. (Defendant's Exhibit B). Plaintiff, however, argues that it agreed to allow Defendant to review its records. (Tonetti Affidavit at ¶ 5.)
Having failed to receive a satisfactory response to its first letter, on November 1, 2005, Plaintiff sent to Defendant a Notice of Default under the Lease and a Notice of Violation of the Consent Order. (Plaintiff's Exhibit A.) This Notice[2] was sent to, and received at the following address: "Mendon Road Leasing Corp., Assignee of Hemisphere Management Corp., Successor in interest to 99A Management Corp., 375 Broadway, Menands, NY 12204." (Id.) Defendant argues that it thereafter called Plaintiff and disputed the charges but that Plaintiff once again refused Defendant's request to review the records. Thereafter, having failed to receive the payments for the CAM charges, on December 6, 2005, Plaintiff sent a Notice of Termination of the Lease to Defendant at the above address. (Plaintiff's Exhibit B.) The Notice of Termination indicated that the Lease would terminate on December 11, 2005. (Id.) In response, Demetrios Heseotes, President of Hemisphere Management Corporation, mailed to Plaintiff a letter in which he indicated that he had not received the Notice of Default and that he rejected Plaintiff's contention that Defendant was in default. (Defendant's Exhibit B.)
On December 15, 2005, Plaintiff instigated two actions against Defendant, No: 05-13166 and 02-137, seeking judgment for rent and possession of the property. In case No: 02-137, Plaintiff filed a Motion for Entry of Judgment of Possession, upon which a hearing date of January 3, 2006 was noted. The motion for entry of judgment was faxed to the Defendant's corporate fax number and was sent to Defendant at the above address by certified mail. However, notice was not provided to the attorneys who were listed in the consent order.
In case No: 05-13166, Plaintiff asserts that it had a constable serve the summons and complaint upon Demetrios Haseotes on December 27, 2005, at 80 Fairhaven Road, Cumberland, Rhode Island. However, the constable, while believing he was serving President Demetrios Haseotes, was actually serving President Haseotes' father, who had the same name. Apparently, the father did not indicate to the constable that he was not the proper individual, and according to the Plaintiff, Haseotes Sr. reviewed the documents and said to the constable "Yes. That's me." Haseotes Sr. then accepted the documents, including the summons, which reflected that Defendant was to appear in District Court on January 4, 2006, or otherwise judgment by default would be entered against it.
Despite that service was effectuated upon President Haseotes' father, and not Defendant, Defendant's attorney swore in his affidavit that he received the complaint and its attached documents between December 27, 2005 and January 3, 2006. (Defendant's Exhibit K.) In response, on January 3, 2006, Defendant filed an answer to the complaint in case No: 05-13166. However, for some unknown reason, this answer was not immediately placed in the court's file, although the answer itself is date stamped by the clerk's office that it was received on January 3, 2006.[3] There appear within the court's file, though, several notations of importance. For instance, on the civil face sheet for case No: 05-13166, there is a note that states "Pres [indecipherable] served — did call atty — Defendant DNA." Furthermore, the 02-137 docket sheets notes that "1/4/06 Defendant no longer repres by Atty — Q as to A of SOC — Pres of Defendant corp served in 05 case. Pres called Plaintiff's Attorney. Haseotes — pass. See 05-13166."
On January 4, 2006, the scheduled hearing took place regarding Plaintiff's request for a judgment for possession. At that hearing, the Judge indicated that case No: 02-137 had been consolidated with case No: 05-13166. (Tr. 01/04/06 at 2.) The Defendant did not appear at the hearing and Plaintiff, through its manager, Gino Tonetti, testified that it was owed rent under the Lease Agreement and that notice had been provided to Defendant. (Id. at 6-9.) At the conclusion of Plaintiff's testimony, the Judge remarked that as Defendant had not appeared at trial, its defenses were not appropriately raised before the court. (Id. at 10). The Judge, therefore, granted Plaintiff's request for possession.
There is dispute about the number of communications, and the content of such, which occurred between Plaintiff and Defendant in the days following the hearing. Plaintiff's counsel contends that it contacted Defendant's counsel when it returned to its office after the January 4, 2006 hearing. Plaintiff states that it left a message advising Defendant that it remained in default and that it should contact Plaintiff as soon as possible. That same day, Plaintiff's counsel stated that it received a call from Defendant's counsel, but was unavailable to speak at the time. In response, Plaintiff's counsel left a message with Defendant's counsel that he was informed of the call. The following day, January 5, 2006, Plaintiff's counsel left a message with Defendant's counsel's secretary informing Defendant that the hearing had taken place on January 4 and that Defendant was in default.[4] Plaintiff further contends that the parties' attorneys traded phone calls over the weekend of January 7 and January 8. Defendant argues to the contrary, asserting that Defendant's counsel only spoke with Plaintiff's counsel on one occasion and that it was not until January 10, 2006, that it was first informed that possession had been entered.
On January 9, 2006, the Court issued an Execution, and a constable seized the premises on behalf of Plaintiff. The parties thereafter met on two occasions, January 10 and January 12, 2006, in an attempt to settle the matter, but no resolution was reached. Defendant then, on January 13, 2006, obtained an emergency motion to enjoin the constable sale of perishable goods. On January 20, 2006, Defendant filed a Motion to Vacate the Judgment. This motion was denied after hearing on January 30, 2006, and Defendant now appeals to this Court. On March 3, 2006, Digital filed a Motion to Intervene in this Superior Court action, alleging that its interest will not be adequately protected without intervention.
 Standard of Review
Rhode Island General Laws § 34-18.1-9(b)(4) permits an aggrieved party to appeal to the Superior Court a District Court decision on a commercial eviction. On appeal, the trial justice reviews all questions of law and fact on a de novo basis. SeeBernier v. Lombardi, 793 A.2d 201, 202 (R.I. 2002).
 Analysis
a) Motion to Vacate for Clerical Error
Defendant first asks this Court to vacate the judgment below because it was based upon clerical error. Defendant claims that the clerk erroneously noted that Defendant's answer had not yet been filed, when it actually had been filed on January 3, 2006. Consequently, because the answer was filed, Defendant asserts that judgment should not have been entered. Defendant argues that if the Court had known that an answer had been filed, the Court would have given Defendant notice of the hearing and Defendant would have appeared to argue its position. Furthermore, Defendant also asserts that the clerk made an error by noting on the civil face sheet that Defendant's attorney had been contacted and that President Haseotes was served. Defendant claims that Plaintiff did not serve the complaint and summons upon President Haseotes, and therefore, the Court was improperly advised.
This motion to vacate is governed by Super. R. Civ. P. 60(a) which provides:
 "Clerical mistakes: Clerical mistakes from judgments, orders or other parts of the record and errors therein arising from oversight or omission may be corrected by the court at any time of its own initiative or on the motion of any party and after such notice, if any, as the court orders. During the pendency of an appeal, such mistakes may be so corrected before the appeal is docketed in the appellate court, and thereafter while the appeal is pending may be so corrected with leave of the appellate court."
The Supreme Court of Rhode Island presently "extend[s] the coverage of Rule 60(a) to apply to clerical errors committed by a clerk's office when that error results in a defendant's lack of notice of a pending trial against him (and his subsequent failure to appear) through no fault of his (or her) own." Clark v.Dubuc, 486 A.2d 603, 605 (R.I. 1985).
Here however, the Court finds that the Defendant's failure to appear at the January 4, 2006 hearing was not attributable to clerical error. In his affidavit, Defendant's attorney swore that he examined the complaint and the documents attached thereto. (Defendant's Exhibit K at ¶¶ 2, 3.) It appears that those attached documents included the summons, as that document was included with the papers and complaint which was served on President Haseotes' father. The summons clearly states that Defendant was to appear on January 4, 2006, and if it failed to do so, judgment by default would be entered. Consequently, while the clerk may have erroneously noted on the cover sheet that service had been effectuated on President Haseotes, it appears that Defendant actually did receive notice, albeit in an indirect manner, and did have notice of the hearing date. Thus, it was not the clerk's incorrect notation that caused the judgment to be entered against Defendant; rather, Defendant knew or should have known of the hearing date and failed to appear. See Clark,486 A.2d at 605.
Similarly, the clerk's failure to indicate that an answer had been filed also did not cause the judgment to be entered against Defendant. When granting judgment for Plaintiff, the Judge stated:
 "The Defendant did not appear today. It appears from the documents that have been provided that the Defendant did have certain arguments or defenses to argue, whether or not they had any merit is not being commented on by this Court, but this is a — the Defendant has chosen not to appear, not to raise those defenses. . . . I, therefore, will grant the Plaintiff — your request for possession. . . ." (Tr. 1/4/06 at 10.)
Judgment was entered against Defendant because Defendant did not appear at the hearing to argue its position. This was attributable not to clerical error, but rather to Defendant's own failure to appear. Therefore, Defendant's motion to vacate due to clerical error is denied.
b) Motion to vacate because the judgment was void for impropernotice and insufficient service of process
The Defendant argues that it was not provided with proper notice and that there was insufficient service of process. In essence, the Defendant challenges the jurisdiction of the court below, as the Supreme Court of Rhode Island has held that "`jurisdiction of the court over the person of a defendant is dependent upon proper service having been made.'" ThetaProperties v. Ronci Realty Co., Inc., 814 A.2d 907, 913 (R.I. 2003) (quoting Shannon v. Norman Block, Inc., 106 R.I. 124,130, 256 A.2d 214, 218 (1969)). Furthermore, the Supreme Court has ruled that
 "Absent a waiver of personal jurisdiction or proper service of legal process, the court lacks jurisdiction to entertain a suit or to enter judgment against a party who has not been properly served with process. . . . Consequently, a judgment entered against a party who has not been properly served with process, or who has not made an appearance, is void ab intio." (Citations omitted.) Id.
Pursuant to Rule 60 (b)(4), the Court may vacate a judgment that is void. Consequently, this Court must determine whether the Plaintiff provided Defendant with proper notice and service of process and, if not, whether the judgment should be vacated as void.
Before the Court can decide whether sufficient notice was provided, it must first determine what rule or law governs the notice required in this particular matter. Defendant first asserts that notice was required pursuant to Dist. Ct. R. Civ. P. 77(d) and that after judgment was entered, the Court should have given notice to the Defendant, who had made an appearance by filing its answer on January 3, 2006. However, Rule 77(d) does not apply to cases in which a party is in default for failure to appear. Here, while the civil face sheet did not have the default box marked, the remaining evidence of record indicates that default judgment was entered for failure to appear. For example, the trial Judge stated that she would not address the merits of any possible defenses as Defendant did not appear at the hearing. (Tr. 1/04/06 at 10.) Further, the summons said "default judgment" would enter if the Defendant did not appear. Consequently, for all essential purposes, this was a default judgment for failure to appear and thus, Defendant was not entitled to Rule 77 notice.
Arguing in the alternative, Defendant claims that if the judgment is treated as a default judgment for failure to appear, Defendant should have been provided three days notice of the hearing on the application for default, as required by Rule 55. Defendant argues that the Rule 55 written notice was not provided and that "default judgments are void if the moving party does not comply with the requirements for providing notice of the pending entry of the default." Valley Heating Cooling v.Bernard/Pocasset Investment Group, L.L.C., 779 A.2d 647, 648
(R.I. 2001). However, this Court finds that the Rule 55 provisions do not apply because they are trumped by the specific statute pertaining to commercial evictions for delinquency of rent — G.L. 1956 § 34-18.1-9.[5]
Pursuant to § 34-18.1-9, Plaintiff was not required by law to provide any particular notice to the Defendant. Section34-18.1-9(b)(1) states that if rent is in arrears for 15 days, whether demanded or not,
 "the landlord wishing to repossess himself of the lands . . . or recover possession from the tenant . . . shall without the necessity of notice, institute a trespass and action for possession in the district court where the premises are situated, and in this action the court may award a plaintiff judgment for possession and for all rent due plus costs." (Emphasis added.)
However, the landlord is still required to serve the summons and complaint in the same manner as a normal civil action, unless a special order is obtained for service in a different manner. Section 34-18.1-9(b)(2). Further, a landlord must comply with any notice provisions that are required by the lease. See William J. Cororan Mark M. Thayer, Residential and CommercialEvictions in Rhode Island 79 (1998).
Thus, while the Plaintiff was not required by law to provide any specific notice to Defendant regarding its action for possession, the Court still must determine whether Plaintiff complied with the Lease Agreement's notice clause, which provides:
 "If rent or any other payment of money required to be made hereunder shall not be paid for more than fifteen (15) days after it is due; or there shall be a failure in the performance or observance of any other agreement or condition contained herein on the part of the Tenant to be performed or observed and such failure shall not be corrected within thirty (30) days (or such longer period as may be required to correct such failure if the tenant shall commence to correct the same within thirty (30) days and thereafter diligently pursue the correction thereof) then Landlord shall have the right at its election, to terminate this lease by giving notice to Tenant of the exercise of said election, and in the event of Landlord's giving such notice of election to terminate, this lease shall terminate on the date designated therefore in said notice, which date shall not be less than three (3) days after receipt of such notice by Tenant, and thereupon, or at any time thereafter, and without any further notice or demand, Landlord may reenter the demised premises in the manner prescribed by law.
 . . .
 It is expressly understood and agreed that no action or proceeding to oust Tenant from Possession or to terminate the term of this lease shall be taken or brought by Landlord unless the notices herein specified be first given and the times to cure the defaults herein above specified have expired without such defaults having been cured." (Lease Agreement ¶ 10.3)
Here, Plaintiff claims that on August 1, 2005, it first sent notice to Defendant that CAM charges/rent was due. Defendant asserts that it did not receive this notice until September 29, 2005. Even if that were true, Plaintiff did not send the Notice of Default until November 1, 2005 and did not mail the Notice ofTermination of Lease to Defendant's corporate offices in New York until December 6, 2005. This provided Defendant with the 30 days to cure, as required by the Lease Agreement. Furthermore, Plaintiff satisfied the requisite three-day gap period between the Notice of Termination and the actual termination of the lease, as the December 6, 2005 Notice of Termination indicated that termination would occur on December 11, 2005. Therefore, this Court finds that Plaintiff provided Defendant with the appropriate notice required by the lease.[6]
While Plaintiff may have provided Defendant with appropriate notice of its action, this Court must also resolve whether there was sufficient service of process, as a judgment that is rendered without sufficient service of process is void. ThetaProperties, 814 A.2d at 913. Here there was no special order for service, so the summons and complaint should have been served in accordance with the Rules of Civil Procedure. In this matter, service of process is governed by Dist. Ct. R. Civ. P. 4(d)(3) which reads as follows:
 "The summons and complaint shall be served together. The plaintiff shall furnish the person making service with such copies as are necessary. Service shall be made as follows: . . . (3) Upon a private corporation, domestic or foreign, by delivering a copy of the summons and complaint to an officer, a managing or general agent, or by leaving a copy of the summons and complaint at the office of the corporation with a person employed therein, or by delivering a copy of the summons and complaint to an agent authorized by appointment or by law to receive service of process provided that if the agent is one designated by statute to receive service, such further notice as the statute requires shall be given."
Plaintiff attempted to effectuate service of process upon Defendant, but mistakenly had a constable serve the summons and complaint on President Heseotes' father. Unfortunately for Plaintiff, Haseotes Sr. was not a manager, agent or any other type of individual upon which one can serve a corporation under Rule 4(d)(3). Therefore, proper service upon the corporate Defendant was not made. However, this Court finds that the defense of failure to effectuate proper service has been waived by the Defendant and therefore, cannot be used to have this Court vacate the judgment.
While service of process may not have been sufficient, and even if this Court were to find that appropriate notice was not provided, the Court finds that Defendant has waived these defenses. By claiming that it was not provided with the proper notice and process, Defendant is essentially making a Rule 12(b)(2) and 12(b)(5) argument that the court lacks jurisdiction over the person for insufficiency of service of process. Pursuant to Rule 12(h) though, these particular defenses are waived if they have not been raised in a party's motion for judgment on the pleadings or in a party's answer. In its answer, Defendant addressed the issues of the merits of the complaint and amongst other defenses, raised two Rule 12(b) defense: (1) failure to state a claim upon which relief can be granted and (2) lack of subject matter jurisdiction. However, in its answer, Defendant did not raise the defenses of lack of personal jurisdiction or insufficiency of service of process, and consequently, these defenses are waived. As such, the Court should treat Defendant's answer as a general appearance and find that the issues of notice and service of processes are immaterial. Mack Construction Co.v. Quonset Real Estate Corp., 84 R.I. 190,194, 122 A.2d 163, 164 (1956).[7]
Thus, although § 34-18.1-9 governs the notice requirements of this case, Plaintiff is still required to comply with the service of process requirements in Rule 4. As the proper individual was not served, service of process was not effectuated, and the court below should have been without personal jurisdiction to render judgment. However, nowhere in its answer did Defendant challenge the service of process or the personal jurisdiction of the Court. Therefore, these defenses are waived. As such, the service of process becomes a non-issue and the judgment is not void. Accordingly, this Court denies Defendant's motion to vacate under Rule 60(b)(4).
c) Motion to Vacate for Excusable Neglect
Defendant next contends that the judgment should be vacated due to Defendant's excusable neglect. In support of this motion, the Defendant has presented three arguments why there was excusable neglect for its failure to attend the January 4, 2006 hearing: (1) Case No: 02-137 lacked the notice to the appropriate attorneys as required by the Consent Order, (2) In Case No: 05-13166, the Defendant was not properly served, and (3) Defendant's attorney believed that filing the answer on January 3, 2006 would prevent any further action from occurring without notice first being given to Defendant.
Superior Court Rule of Civil Procedure 60(b)(1) provides that "On motion and upon such terms that are just, the court may relieve a party or a party's representative from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect. . . ." The excusable neglect that would qualify one for relief from judgment is generally that course of conduct that a reasonably prudent person would take under similar circumstances. Reyes v.Providence Place Group, L.L.C., 853 A.2d 1242, 1248 (R.I. 2004) (citing Daniel v. Cross, 749 A.2d 6, 9 (R.I. 2000)). "`Excusable neglect' is a more rigorous standard than `good cause' and it requires a party to show `that the neglect . . . was occasioned by some extenuating circumstances of sufficient significance to render it excusable.'" Id. In determining which type of negligence will be excusable, courts have said that excusable neglect
 "`is at bottom an equitable [decision], taking account of all relevant circumstances surrounding the party's omission. These include . . . the danger of prejudice to the [opposing party], the length of the delay and its potential impact on judicial proceedings, the reason for the delay, including whether it was within the reasonable control of the movant, and whether the movant acted in good faith.'" Conetta v. National Hair Care Centers, Inc., 182 F.R.D. 403, 406 (D.R.I. 1998) (quoting Pioneer Inv. Servs. Corp. v. Brunswick Assocs. Ltd. Partnership, 507 U.S. 380, 395 (1993)).
This Court finds that Defendant's behavior has not risen to the level of excusable neglect. It was not excusable for the Defendant to miss the hearing on January 4, when the Defendant had sufficient notice to know that its answer was due on January 3. Section 34-18.1-9(b)(3) dictates that the hearing will occur on the day following the date answers are due.[8] Even if notice were not properly served, because the Defendant knew that the answers were due on January 3, pursuant to § 34-18.1-9, Defendant should have known the hearing could have been on January 4. Furthermore, it can be presumed that Defendant had actual knowledge of the hearing date as it was in the summons that was included with the complaint, which Defendant's attorney said he read. (Defendant's Exhibit K at ¶ 3.) This is not the type of extenuating circumstances that renders the failure to appear excusable. See Conetta v. National Hair Care Centers,Inc., 186. F.R.D. 262, 269-70 (D.R.I. 1999).[9] Thus, because Defendant should have known about the hearing date on January 4, 2006, and may actually have known about that hearing, there is insufficient basis upon which to vacate the judgment for excusable neglect.
d) Motion to Vacate because of Plaintiff's Misrepresentations
Defendant also requests this Court to vacate the judgment because of Plaintiff's misrepresentations. Defendant argues that at the January 4, 2006 hearing, Plaintiff misrepresented the following information to the court: (1) Plaintiff told the court that that the President of the corporation had been served when in actually it was the President's father who had been served and (2) Plaintiff incorrectly told the court that Defendant did not cure the default by paying the CAM charge when Defendant argues the charges were paid on December 19, 2005.
Pursuant to Rule 60(b)(3),
 "On motion and upon such terms as are just, the court may relieve a party or a party's legal representative from a final judgment, order, or proceeding for the following reasons: . . . (3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party."
When determining whether to vacate a judgment pursuant to Rule 60 (b)(3), the Supreme Court of Rhode Island has distinguished misrepresentation from fraud. The Court has held that
 "As Rule 60(b) lists both fraud and misrepresentation, we hold that the two are distinct bases for a motion to vacate. . . . [G]enerally deceit requires knowledge or reason to know of the falsity of a representation, whereas misrepresentation has several states, including negligent and innocent misrepresentation. Misrepresentation is defined as a manifestation by words or other conduct by one person to another that, under the circumstances, amounts to an assertion not in accord with the facts." (Emphasis added.) Pari v. Pari, 558 A.2d 632, 637 (R.I. 1989).
The Supreme Court of Rhode Island has further held that "even an innocent misrepresentation may be sufficient to grant relief from a judgment." Id. (citing In re Julie, 114 R.I. 419, 422,334 A.2d 212, 214 (1975)). However, the trial justice has broad discretion to grant a motion to vacate, and the burden is on the moving party to show by clear and convincing evidence that the alleged fraud prevented him or her from fully presenting his or her case. Northeastern Electric Co. Inc. v. American CapitalCorp., 492 A.2d 829, 832 (R.I. 1985). See also, Montgomeryv. Hall, 592 F.2d 278, 279 (5th Cir. 1979).
Here, even if the Court finds that Plaintiff made misrepresentations to the Court, Defendant has not satisfied its burden of showing that the misrepresentation "prevented [the Defendant] from fully presenting his case."[10]Northeastern Electric Co. Inc., 92 A.2d at 832. (Defendants' motion to vacate for misrepresentation to the court was denied because defendants were able to present their case and expose the inaccuracies.) As discussed above, because Defendant filed its answer on January 3, 2006, it knew or should have known that the hearing would take place the following day. Instead of attending this hearing, Defendant chose not to appear and present a defense. The misrepresentations of Plaintiff at the hearing did not prevent Defendant from fully presenting its position; rather, Defendant's failure to appear prevented it from fully presenting its defense. Consequently, Defendant's motion to vacate because of Plaintiff's misrepresentations is denied.
e) Digital's Motion to Intervene
The Court must finally resolve whether Digital should be permitted to intervene. Digital seeks to intervene as of right pursuant to R.I. Super. R. Civ. P. 24(a)(2), which allows for intervention
 "when the applicant claims an interest relating to the property or transaction which is the subject matter of the action and the applicant is so situated that disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest, unless the applicant's interest is adequately represented by existing parties."
In support of its motion to intervene, Digital argues that it has an interest in the property that would be impaired if intervention was denied. In other words, if Defendant loses the underlying case, Digital would lose the ability to foreclose the property.
The Supreme Court of Rhode Island has held that Rule 24(a)(2) has three requirements that must be satisfied before intervention will be permitted. In order to intervene, the party seeking intervention is required:
 "(1) to file a timely application for intervention, (2) to show an interest in the subject matter of that action in that the disposition of the action without intervention would as a practical matter impair or impede their ability to protect that interest, and (3) to establish that their interest was not adequately represented by the existing parties." Marteg Corp. v. Zoning Bd. of Review, 425 A.2d 1240, 1242 (R.I. 1981).
Here, Digital has timely moved to intervene. "Timeliness of intervention is to be judged by two criteria: (1) the length of time during which the proposed intervenor has known about his interest in the suit without acting and (2) the harm or prejudice that results to the rights of other parties by delay." Id. at 1243. A party seeking to intervene after judgment carries a heavy burden as intervention after final judgment is unusual and not often granted. Id. However, the timeliness of a motion to intervene is a matter committed to the sound discretion of the trial justice. Direct Action for Rights and Equity ("DARE") v.Gannon, 713 A.2d 218, 222 (R.I. 1998). In DARE, the Court found that the motion to intervene was untimely, as the party seeking intervention was aware of the ongoing litigation yet decided to initially remain on the sidelines as an observer.Id.
Unlike the party seeking intervention in DARE, Digital did not have notice of the original action. Thus, Digital did not conscientiously decide not to intervene while the matter was in the District Court. Although it is difficult to intervene after final decree, intervention may be necessary to protect a right that cannot otherwise be protected. If default stands, Digital may not be able to protect its interest in the property.[11] Thus, Digital has demonstrated that it has timely filed its motion to intervene.
Digital has also demonstrated that Defendant does not adequately represent Digital's interest. An applicant's burden of showing that there is a lack of adequate representation should be treated as minimal. Credit Union Central Falls ("CUCF") v.Groff, 871 A.2d 364, 368 (R.I. 2005) (citing Trbovich v. UnitedMine Workers of America, 404 U.S. 528, 538 n. 10 (1972)). Representation is inadequate if the existing party "is not diligent in its prosecution or defense of the action, or if the party fails to contest the action, such as by permitting theentry of a default judgment against him." (Emphasis added.) Annotation, When is Representation of Applicant's Interest byExisting Parties Inadequate and Applicant Bound by Judgment soas to be Entitled to Intervention as of Right Under Federal Rule24(a)(2) and Similar State Statutes or Rules, 84 A.L.R.2d 1412, 1421 (1962). Furthermore, other courts have held that a judgment "having been taken by default establishes prima facie that the representation of [intervenor's] interest by existing parties has been inadequate." Stull v. Terry Tench, 81 N.Y.S. 2d 43, 45
(N.Y. Misc. 1948). Here, Defendant allowed a judgment to be entered against it for its failure to attend the January 4, 2006 hearing and argue a defense. Consequently, Digital has satisfied the "minimal" requirement that representation by Defendant was inadequate.
While Digital has demonstrated that it timely filed for intervention and that its interest is not adequately represented by Defendant, Digital does not have a protectable interest in this matter. The Court recognizes that "[i]nterests in property are the most elementary type of right that Rule 24(a) is designed to protect." CUCF, 871 A.2d at 367. However, the mere fact that a lawsuit may impede a third party's ability to recover in a separate suit ordinarily does not give the third party a right to intervene. Id. (citing Mountain Top Condominium Association v.Dave Stabbert Master Builder, Inc., 33 V.I. 311, 72 F.3d 361, 366 (3d Cir. 1995)). If though, an intervenor has an interest in a specific fund, intervention may be permitted in a case affecting that fund. Id. at 367.
Here, Digital is not simply trying to protect its right to collect; rather, it is trying to protect its specific interest in the property upon which it has a mortgage. However, Digital cannot show that it has a protectable interest requiring intervention in this case because Digital was not entitled to notice of the Plaintiff's claim. The specific language of the Lease Agreement provides:
 "If the Tenant has given notice to Landlord of the name and address of any mortgagee of the demised premises, a duplicate copy of every notice to Tenant shall be given to said mortgagee at said address by registered or certified mail. . . . Such mortgagee shall have the same rights as Tenant and a reasonable period of time after receipt by it of notice of failure of Tenant to correct any failure of the Tenant." (Emphasis added.) (Lease Agreement ¶ 8.1.)
The letters allegedly informing Plaintiff of Digital's interest are not signed by Plaintiff and there is no other evidence that Defendant told Plaintiff about Digital. Consequently, this Court finds Defendant did not notify Plaintiff of Digital's interest. Digital argues that nonetheless, Plaintiff had constructive notice of Digital's interest because Digital filed its leasehold mortgage in the Cumberland Registry of Deeds. While constructive notice may have existed, the Lease Agreement required Defendant to notify Plaintiff of any third party and where to send additional notice. See [AJ] Aksomitas v. Aksomitas,205 Conn. 93, 100, 529 A.2d 1314, 1318 (1987) (Constructive notice does not in all cases provide sufficient notice or a duty to inquire as to who should receive notice.) As Defendant did not satisfy this obligation, Plaintiff did not have the affirmative obligation to notify Digital. Consequently, Digital does not have an interest in the suit, and its motion to intervene is denied.
 Conclusion
Defendant has failed to show that the judgment below should be vacated for clerical error, excusable neglect, or misrepresentation. This Court also finds that Defendant has waived the defenses of lack of personal jurisdiction and insufficient service of process; consequently, the Court will not hold the judgment to be void on such grounds. Therefore, Defendant's appeal is denied. Furthermore, Digital's motion to intervene is also denied. Parties shall submit the appropriate Order for entry with the Court.
[1] In order to avoid confusion, while Mendon Road Leasing Corporation is now the named defendant, the lessee, 99A Management Corporation, shall also be referred to as "Defendant."
[2] Both notices were contained in a single document.
[3] At the top of the Answer, there is a handwritten notation "NIF".
[4] The message that was taken by the secretary contains the following: "Date 1/5 @ 2:20 Atty Lamongue tel: 274-6700 Message: Re: Hemisphere hearing yesterday client in default." (Defendant's Exhibit K).
[5] Even if Rule 55 did apply, there is the possibility Defendant had the three day notice as Defendant's counsel stated in his affidavit that he became aware of the complaint and accompanying documents as early as December 27, 2005. (Defendant's Exhibit K.) The summons with that complaint clearly indicated that the hearing would take place on January 4, 2006 and provides in bold that "If you fail to appear on the datestated below, judgment by default will be taken against you forthe relief demanded in the complaint."
[6] There is also a question as to whether Plaintiff had to satisfy the notice required in the Consent Order. Defendant in its brief pointed out, however, that all of the provisions in the Consent Order have been complied with, and thus Plaintiff's complaint must be referring to current CAM charges. If that is the case, the notice requirements of the Consent Order would not apply. The Court, though, does not have to resolve this issue, as Defendant has waived the defenses of insufficient notice and service. (See below.)
[7] The Supreme Court of Rhode Island has since held that there is no real modern distinction between general and specific appearances. The Court has articulated that
 "Rule 12 makes no reference to either a general or special appearance. The former practice of appearing specially to attack the jurisdiction of the court is no longer necessary. While a defendant who simply answers to the merits of a claim thereby consents to the jurisdiction of the court, he does not do so if he raises jurisdictional objections at the same time that he makes other defenses." Hall v. Kuzenka, 843 A2d 474, 478-79 (R.I. 2004). Hall, however, involved a defendant who had made a Rule 12 motion after his answer, but who had previously raised the same defense in his answer. The Court found that with respect to motions filed under Rule 12(b), a court may consider a post-answer motion raising a defense that was asserted in the answer. Such is not the situation here, as the defenses Defendant now relies upon were not originally pled in the answer. Consequently, while there may not be the true distinction of general and special appearance as there once was, the Rule 12(b) defenses still can be waived if not timely made, and by making an appearance without timely challenging service or jurisdiction, Defendant cannot now challenge such.
[8] Section 34-18.1-9(b)(3) states that "Answer to the summons and complaint shall be made within seven (7) days of the service upon the defendant. The action shall be heard on the next court day following the seven (7) day period, and shall take precedence on the calendar. If no answer is filed within the time prescribed, judgment shall enter forthwith.
[9] In Conetta, the Court found that the attorney was sophisticated to know where the complaint should have been filed. Consequently, it was not excusable neglect for the attorney not to have known of the right to sue based on the complaint. Likewise here, Defendant's attorney should have known the law, §34-18.1-9, and realized that the hearing could occur the day after the answer was filed.
[10] The Plaintiff testified that on December 6, 2005, it sent a notice of termination of the lease to Defendant and that after the notice was sent, the default was not cured. However, Defendant has provided bank records that it wired $3,285.92 to Plaintiff on December 19, 2005. Additionally, Plaintiff stated that President Haseotes was served. (Tr. 1/4/06 at 3.) All the evidence though, indicates that it was President Haseotes' father who was actually served, not the Defendant's President. The Court need not determine whether these assertions were misrepresentation, though, because even if they were, they did not prevent Defendant from presenting its case. Consequently, the motion to vacate on this ground shall be denied.
[11] However, Digital could still attempt to recover any of Defendant's non-payment from Defendant's other assets, although it would not have the same priority as it has with the property in question.